UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CHAIM KAPLAN, et al.

                      Plaintiffs,

                                 Civ. No. 10-5298 (KMW)

          -against-


AL JAZEERA

                      Defendant.

-------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### Introduction

This is a civil action pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a), the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, and supplemental causes of action, arising from a series of rocket and missile attacks on civilians in Israel carried out by the Hezbollah terrorist organization between July 12 and August 14, 2006 ("Hezbollah Rocket Barrage").

The plaintiffs are American, Israeli and Canadian civilians injured in the Hezbollah Rocket Barrage, and the family members and personal representatives of the estates of one American citizen and four Israeli citizens murdered by the Hezbollah Rocket Barrage.

Plaintiffs' First Amended Complaint ("FAC") alleges that defendant Al Jazeera knowingly and intentionally provided extensive material support and resources to Hezbollah that enabled and facilitated the Hezbollah Rocket Barrage and thereby harmed to the plaintiffs.

Al Jazeera has moved to dismiss the FAC. For the reasons set forth below, that motion should be denied and this case should proceed to discovery and trial.

**RELEVANT FACTS**

Unfortunately, Al Jazeera's motion substantively misstates the allegations of the FAC. Like so many motions to dismiss filed since *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009) were issued, Al Jazeera's motion is chock-full of bald, conclusory and formulaic assertions that the allegations against it are bald, conclusory and formulaic and so "implausible" under *Twombly* and *Iqbal.*

Accordingly, before responding to Al Jazeera's specific arguments for dismissal, plaintiffs will first briefly summarize the <u>actual</u> allegations of the FAC.

Plaintiffs assert that Al Jazeera is liable for their harm because it broadcast the locations of Hezbollah rocket landings with the <u>intention</u> of assisting Hezbollah to improve its aiming ability, that those broadcasts assisted Hezbollah to aim more accurately and that that improved aiming ability was a proximate cause of the plaintiffs' harm. FAC at ¶¶ 29-42, 102-112.

Plaintiffs' allegation that Al Jazeera intentionally assisted Hezbollah to carry out these rocket attacks is founded on the broader allegation that as a matter of official organizational policy, Al Jazeera shares Hezbollah anti-Israel and anti-American goals and supports Hezbollah's use of terrorism against Israeli and American targets. FAC ¶¶ at 30-32.

Importantly, plaintiffs' allegation that Al Jazeera supports Hezbollah's anti-Israel and anti-American goals and activities is backed up by numerous statements and actions – *inter alia* by Al Jazeera's own spokesman, the U.S. government, other Arabic-language news media and the Israeli government – expressly cited and quoted in the FAC:

    a.  In September 2001, U.S. officials filed a diplomatic complaint against Al Jazeera, accusing Al Jazeera of having an anti-American slant and objecting to Al Jazeera's describing Palestinian suicide bombers as "martyrs."

    b.  In November 2001, the Washington Times noted that "[s]ince September 11, the coverage of the attacks and America's response has been almost uniformly

positive – for the Taliban and other Islamicist radicals, that is," and that "[a]ccording to a recent New York Times article by Fouad Ajami, professor of Middle Eastern studies at Johns Hopkins, Al-Jazeera's coverage of September 11 and [the United States'] war against terrorism have been entirely from the Taliban point of view."

c.   In 2002 Professor Khalid al Dakheel of King Saud University stated that: "Al-Jazeera['s] … coverage is anti-Israelis. Their coverage is anti-Americans."

d.   In 2003 Al Jazeera spokesman Jihad Ali Ballout confirmed that while Al Jazeera did seek to turn a profit: "[M]oney is not of paramount importance. We believe we have a mission."

e.   In August, 2004, the Iraqi government suspended Al Jazeera's operations for "inciting hatred" after an independent panel had evaluated Al-Jazeera's Iraq coverage and concluded that it advocated violence against American forces.

f.   In 2006, Lt. Col. Todd Vician, spokesman for the U.S. Department of Defense stated: "Anyone, even an American living in the Middle East watching a network like Al Jazeera day after day after day, would begin to believe that America was bad just based on the biased, one-sided coverage."

g.   In 2006, Dr. Juan Cole, an expert on the Middle East and professor of Modern Middle East and South Asian History at the University of Michigan stated that, "I don't think I've seen reporting on Al Jazeera where the Americans have ever done anything right … When they report on insurgency in Iraq, the insurgents are always the good guys and the U.S. soldiers are bad guys … In some instances, it could be true, and in other cases there are some pretty nasty guys in the insurgency. But Al Jazeera's line would be that the insurgents are poor people … who want to lead normal, free lives, and they're oppressed by the U.S. occupation."

h.   In 2006, leaders of Fatah (the central faction in the PLO) accused Al Jazeera of being biased in favor of the radical terrorist organization Hamas. Exhibit A. For its part, Hamas praised Al Jazeera. *Id*.

i.   According to Dr. Bruce Maddy-Weizman, a contemporary Middle East and North Africa expert at Tel Aviv University, during the terrorist rocket and missile attacks on civilians in Israel carried out by Hezbollah between July 12 and August 14, 2006, Al Jazeera "boosted Hizballah and [Hezbollah leader] Sheikh Hassan Nasrallah's image … Al-Jazeera's focus had a political intent: that Israel was doing awful things to Lebanon and was suffering."

    j.    According to Amira Oron of the Israeli Foreign Ministry, during the terrorist rocket and missile attacks on civilians in Israel carried out by Hezbollah between July 12 and August 14, 2006 "Al-Jazeera was no different from [Hezbollah's own station] Al-Manar … It's an Arab station and its intent is to promote the Arab cause."

    k.    In July, 2009, Tamman al-Barazi, an Arab journalist who writes for al-Watan al-Arabi, confirmed that "Al-Jazeera has a bias towards … Hizballah."

FAC at ¶ 33.

Plaintiffs have reproduced these facts in full because Al Jazeera's motion is founded, to a very great extent, on the false proposition that it is just a television network that did its job of reporting the news, and that plaintiffs' allegations are implausible if not preposterous.

## ARGUMENT

**I.    The First Amendment Does Not Shield Al Jazeera from Liability**

Al Jazeera asserts that the First Amendment shields it from any and all liability in this case. In other words, Al Jazeera claims that even if, as alleged in the FAC: (i) it did in fact broadcast the location of the rocket strikes with the intention of assisting Hezbollah to improve its aiming ability; (ii) that those broadcasts did in fact assist Hezbollah to aim its rockets more accurately; and (iii) that that improved aiming ability was in fact a cause of the harm suffered by the plaintiffs – the First Amendment nonetheless bars this Court from imposing liability on it.

Because Al Jazeera raises this First Amendment defense at multiple points in its motion, for the sake of efficiency the plaintiffs will address – and refute – this defense at the outset.

Al Jazeera's claim that the First Amendment shields it from liability in this case because it broadcast truthful information is meritless and, with all due respect, borders on the frivolous.

It is long and well established that the dissemination of even truthful information is not protected by the First Amendment where such dissemination poses a threat to the public safety or

to other important interests. *See e.g. Haig v. Agee*, 453 U.S. 280, 308 (1981) (Noting that "[l]ong ago ... this Court recognized that no one would question but that a government might prevent ... the publication of the sailing dates of transports or the number and location of troops," without violating the First Amendment, and holding that dissemination of information intended to "obstruct[] intelligence operations ... [is] clearly not protected" by the First Amendment) (internal quotations and brackets omitted); *Virginia v. Bla*ck, 538 U.S. 343, 358-359 (2003) ("The First Amendment permits restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality ... Thus, for example, a State may punish those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace.") (internal quotation marks omitted); *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 244 (4th Cir. 1997) (Reversing dismissal on First Amendment grounds of civil action against publisher of murder manual, since "*every* court that has addressed the issue, including this court, has held that the First Amendment does not necessarily pose a bar to liability for aiding and abetting a crime, even when such aiding and abetting takes the form of the spoken or written word."); *see also id*. at 244-267 (extensively surveying and analyzing cases); *U.S. v. Posey*, 864 F.2d 1487 (9th Cir. 1989) (First Amendment does not provide defense to violation of provision prohibiting supplying non-classified technical information to South Africa since "[t]echnical data that is relatively harmless and even socially valuable when available domestically may, when sent abroad, pose unique threats to national security. It would hardly serve First Amendment values to compel the government to purge the public libraries of every scrap of data whose export abroad it deemed for security reasons necessary to prohibit."); *U.S. v. Barnett*, 667 F.2d 835, 842 (9th Cir. 1982) (Rejecting defendant publisher's claim "that he

had a first amendment right to disseminate ... information [containing instructions for the manufacture of PCP] through the mails even if the recipients use the same for unlawful purposes" since the "first amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose. Crimes, including that of aiding and abetting, frequently involve the use of speech as part of the criminal transaction.") (internal quotations omitted); *U.S. v. Edler Industries*, 579 F.2d 516, 522 (9th Cir. 1978) (First Amendment does not provide defense to violation of provision prohibiting export of military blueprints publicly available in the United States since "[g]iven the unquestionable legitimacy of the national interest in restricting the dissemination of military information, the claim of public availability in the United States is not a defense recognized by the Constitution.").

The plaintiffs allege that Al Jazeera broadcast the location of Hezbollah rocket strikes with the specific intention of assisting Hezbollah to more accurately aim its rockets. Such broadcasts are no more protected by the First Amendment than "the publication of the sailing dates of transports or the number and location of troops" (*Haig*, 453 U.S. at 308), than the dissemination of information designed to "obstruct[] intelligence operations" (*id.*), than the publication of information containing instructions about committing a murder (*Rice*, 128 F.3d 233), than the publication of information explaining how to make PCP (*U.S. v. Barnett*, 667 F.2d 835) or than the illegal export of publically available information and documents (*U.S. v. Posey*, 864 F.2d 1487, *U.S. v. Edler Industries*, 579 F.2d 516).

Al Jazeera purports to base its First Amendment defense on *New York Times Co. v. U.S.*, 403 U.S. 713 (1971), *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 (1975); *Smith v. Daily Mail*, 443 U.S. 97 (1979) and *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989).

In fact, none of these cases support Al Jazeera's position. The decision in *New York Times* involved prior restraint and so is entirely inapposite here. Indeed, the Supreme Court expressly noted that the First Amendment bar on prior restraint is higher than that governing a criminal prosecution, and that its refusal to restrain publication did not mean that the Times could not be held liable after the fact. *See id* at 733 ("Prior restraints require an unusually heavy justification under the First Amendment; but failure by the Government to justify prior restraints does not measure its constitutional entitlement to a conviction for criminal publication.").

The decisions in *Cox*, *Smith* and *The Florida Star* are no less inapposite: these cases all involved statutes prohibiting the invasion of the right of privacy. Here, by contrast, Al Jazeera is alleged to have intentionally assisted a terrorist organization to murder and inflict serious physical injuries on innocent civilians. While preserving the right to privacy is significant interest, it clearly cannot be compared to the absolutely vital public interest in preventing acts of murder and physical assault by terrorists. Al Jazeera's attempt to compare the two is absurd.

In sum, Al Jazeera's attempt to take refuge in the First Amendment is without merit.

## II.    The FAC States a Valid Claim Under § 2333 of the Antiterrorism Act

The American plaintiffs assert a civil claim against Al Jazeera for "international terrorism" under § 2333 of the ATA. FAC at ¶¶ 113-125.

Al Jazeera has moved to dismiss the § 2333 claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As shown below, the FAC clearly states a valid claim under § 2333, and Al Jazeera's motion to dismiss that claim should be denied.

Section 2333 of the ATA creates a civil cause of action for a U.S. national "injured in his or her person, property, or business by reason of an act of international terrorism" and for the estate, survivors, and heirs of such a person. 18 U.S.C. § 2333(a).

The term "international terrorism" used in § 2333(a) is defined in § 2331 of the ATA as "activities" that meet four cumulative conditions: *First*, the activities must "involve violent acts or acts dangerous to human life"; *Second*, the activities must involve "acts ... that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; *Third*, the activities must "appear to be intended: (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping"; and *Fourth*, the activities must "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." § 2331(1).

The FAC more than adequately pleads each of these elements against BOC:

### Acts Dangerous to Human Life

To qualify as "international terrorism" a defendant's conduct must involve either violent acts or "acts dangerous to human life." § 2331(1)(A). Al Jazeera claims in passing that this element is not met here because "news reporting … does not involve 'violent acts or acts dangerous to human life.'" Memo at 9. But the FAC alleges in detail that Al Jazeera intentionally assisted Hezbollah to more accurately aim its rockets. The FAC therefore correctly asserts that "the actions of defendant Al Jazeera were dangerous to human life by their nature and as evidenced by their consequences. At least 43 civilians were murdered by the Hezbollah Rocket Barrage, which was caused and facilitated by the actions of defendant Al Jazeera." *Id.* at ¶ 119.

Notably, the Seventh Circuit has held that "[g]iving money to Hamas, like giving a loaded gun to a child (which also is not a violent act), is an 'act dangerous to human life' within the meaning of § 2331(1)(A). *Boim v. Holy Land Foundation*, 549 F.3d 685, 690 (7th Cir. 2008).

Clearly, then, the FAC adequately alleges this element.

**Acts That Are Criminal**

A defendant's actions will not be deemed "international terrorism" unless they constitute "a violation of the criminal laws of the United States or of any State, or … would be a criminal violation if committed within the jurisdiction of the United States or of any State." § 2331(1)(A).

Thus, to satisfy this requirement, a § 2333 plaintiff need only point to <u>any</u> federal or State criminal provision that was violated by the defendant's conduct, or that <u>would</u> have been violated had the defendant acted within the jurisdiction of the U.S. or the State concerned.[1]

In the instant case, the FAC adequately alleges that the criminality requirement is satisfied because Al Jazeera's conduct violated, or if committed within the United States would have violated, numerous federal and State provisions.

<u>18 U.S.C. § 2339A</u>

The FAC asserts that the actions of Al Jazeera violated, or would have violated if committed within the United States, the provisions of 18 U.S.C. § 2339A. FAC at ¶ 115.

Section 2339A criminalizes the provision of "material support or resources" (defined by § 2339A(b)(1) as including "any … service" and "expert … assistance"), when the provider knows or intends that the "material support or resources" are to be used in preparation for, or in carrying out, a violation (*inter alia*) of §§ 2332 (homicide of or infliction of serious bodily harm

---

[1] Many of the § 2333 actions brought to date have sought to satisfy this criminality requirement by alleging that the defendant violated <u>criminal</u> provisions of the ATA (i.e. the criminal prohibitions set forth at 18 U.S.C. §§ 2332 - 2339). However, the plain language of § 2331(1)(A) makes clear that the criminality requirement can be based on a violation of <u>any</u> federal or state criminal provision.

on a U.S. national outside the United States), 2332b (acts of terrorism transcending national boundaries) and 2332f (bombings of places of public use).

The FAC alleges in extensive detail that Al Jazeera provided extensive "services" and "expert … assistance" to Hezbollah – in the form of real-time video transmissions – knowing and intending that those services and that assistance  were "to be used in preparation for, or in carrying out" further Hezbollah terror attacks – attacks which clearly violated 18 U.S.C. §§ 2332, 2332b and 2332f, or would have violated those provisions "if committed within the jurisdiction of the United States" § 2331(1)(A).

In purported reliance on *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705 (2010), Al Jazeera argues that its conduct did not violate §2339A because *Holder* held that provision of a "service" to a terrorist organization is prohibited only when the service is provided as "concerted activity ... performed in coordination with, or at the direction of, a foreign terrorist organization." and Al Jazeera is not alleged to have coordinated its broadcasts with Hezbollah. Memo at 10, quoting *Holder*. This argument fails for at least two interrelated reasons:

First, *Holder* reached this conclusion on the basis of the language of § 2339B which – unlike § 2339A – applies only to a person who "provides material support or resources to a foreign terrorist organization." § 2339B(a)(1) (emphasis added).

Parsing the word "to," the Supreme Court stated that "[t]he statute prohibits providing a service "*to* a foreign terrorist organization." § 2339B(a)(1) (emphasis added). The use of the word "to" indicates a connection between the service and the foreign group."

By contrast, § 2339A does not contain the term "to" and does not require the service to be provided by the offender "to" the terrorist organization. Indeed, § 2339A does not require that the recipient of the service be a terrorist organization at all.

Accordingly, *Holder* is inapposite.

Second, the facts of *Holder* are light years from the facts of this case. *Holder* was grappling with a claim that peaceful political advocacy on behalf of a terrorist organization might be prohibited under the plain language of § 2339B, in violation of the First Amendment. Here, of course, Al Jazeera's conduct involves the provision of assistance to a terrorist organization with the intention of enhancing its ability to carry out terrorist attacks. Comparing the facts of this case with those in *Holder* is thus an insult to the intelligence.

Essentially, Al Jazeera is urging this Court to hold that provision of a service for the commission of one of the crimes enumerated in § 2339A is not a violation unless the provider of the service acts at the direction of or in coordination with the primary offender, because any other construction would run afoul of the First Amendment. Such a construction both flies in the face of the plain language of § 2339A and squarely conflicts with the case law holding that speech intended to effectuate a crime is not protected by the First Amendment even when speaker and the offender (i.e. the recipient of the information) have no contact with one another:

> A similar first amendment argument was proffered in *United States v. Buttorff*, 572 F.2d 619 (8th Cir.), cert. denied, 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). In *Buttorff* the defendants were convicted of aiding and abetting persons who filed false or fraudulent tax returns after hearing defendants address a public meeting as to various ways to avoid payment of taxes, including claiming large numbers of allowances to stop withholding. The court held:
>
>> Although the speeches here do not incite the type of imminent lawless activity referred to in criminal syndicalism cases, the defendants did go beyond mere advocacy of tax reform. They explained how to avoid withholding and their speeches and explanations incited several individuals to activity that violated federal law and had the potential of substantially hindering the administration of the revenue. This speech is not entitled to first amendment protection and, as discussed above, was sufficient action to constitute aiding and abetting the filing of false or fraudulent withholding forms.

*Id*. at 624.

> It should be noted that in *Buttorff* <u>the defendants had virtually no personal contact with the persons who filed false income tax returns. Instead, they gave speeches before large groups encouraging and advising others to evade income taxes. The court affirmed the conviction despite the absence of any proof that Buttorff profited from the filing of false tax returns by others, or had any knowledge of the fact that such returns had been in fact filed</u>.

*U.S. v. Barnett*, 667 F.2d 835, 842-843 (9th Cir. 1982) (emphasis added).

Thus where, as here (and unlike in *Holder*), the speaker <u>intends</u> to facilitate the commission of a crime by another, no First Amendment protection exists even if the speaker and the recipient of the information have no contact or coordination between them.

Accordingly, there is no reason to construe § 2339A as requiring such coordination.

Al Jazeera also argues that its conduct is not criminal under § 2339A because it did not supply Hezbollah with a "specific skill, as opposed to general knowledge" or "advice derived from 'specialized knowledge.'" Memo at 13.

This argument is a non sequitur in respect to provision of a "service": these terms refer only to provision of material support in the form of "training" or "expert advice or assistance," not in the form of a "service."

Moreover, the information supplied by Al Jazeera – precise real time information regarding the location of the rocket hits – was clearly "specialized knowledge" since Al Jazeera had personnel on the ground gathering and transmitting this information while Hezbollah did not.

Finally, Al Jazeera argues that there is an alternative non-culpable explanation for its conduct, i.e. that it was simply a news organ doing its job. But as shown in ¶ 33 of the FAC,

there is more than ample evidence that Al Jazeera is not a regular news agency, and that Al Jazeera's ultimate purpose is not to report the news but to achieve political goals.[2]

Indeed, if Al Jazeera's argument was accepted, no ATA actions could ever be brought against any ostensibly legitimate entities – such as the numerous banks which are currently defending ATA actions – because such defendants can always claim that it is more plausible than not that their conduct was legitimate and innocent.[3]

Thus, the criminality requirement of §§ 2331(1)(A) and 2333 is met by the allegation that Al Jazeera violated § 2339A, which in turn is fully supported by the allegations of the FAC.

<u>IEEPA; UNPA; Executive Orders 12947 and 13224; 31 C.F.R. §§ 595.204 and 594.204</u>

The FAC also alleges that Al Jazeera violated, or would have violated if it had acted within the U.S., the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 *et seq*. ("IEEPA"), the United Nations Participation Act ("UNPA", 22 U.S.C. § 287c), Executive Orders 12947 and 13224 and 31 C.F.R. §§ 595.204 and 594.204 which prohibit "the making ... of any contribution of ... goods, or services to or for the benefit of" a Specially Designated Terrorist or a Specially Designated Global Terrorist. FAC at ¶ 116-117.

Al Jazeera asserts on several grounds, none of which has merit, that its conduct did not violate these provisions.

---

[2] Al Jazeera also argues that plaintiffs' allegations that its conduct assisted Hezbollah to aim its rockets are not plausible. Memo at 6 n. 1. Obviously, one would normally have to have specialized military expertise to decide whether these allegations are plausible. Fortunately, such expertise is not necessary here, because it is alleged and undisputed that Israel bars real-time broadcasts of the location of rocket strikes precisely because such broadcasts enable Hezbollah (and Hamas) to better aim their rockets. *See* FAC at ¶ 38. Thus, since Israel bars such broadcasts for exactly this purpose, it is obvious that these allegations are plausible. To find these allegations implausible, the Court would first have to find that Israel's military censorship rules are frivolous.

[3] Al Jazeera seeks to compare itself to legitimate news agencies that reported on the Lebanon War. No such comparison is possible: unlike Al Jazeera, which intended to help Hezbollah, other news agencies acted with the intention of broadcasting the news and, at most, getting a "scoop."

First, Al Jazeera argues that these prohibitions apply only to "a U.S. person" and that it does not meet the definition of a "U.S. person." Memo at 17. This claim is baseless, since 31 C.F.R. §§ 595.315 and 594.315 both define a "U.S. person" as including "any person in the United States" and §§ 595.309 and 594.308 both define "person" as "an individual or entity."

Thus, a "U.S. person" is any "entity … in the United States." Al Jazeera "has offices and staff … in New York and elsewhere in the United States." FAC at ¶ 13. Accordingly, Al Jazeera is a "U.S. person" for the purpose of these provisions. *Cf. Hoffman-La Roche, Inc. v. Invamed, Inc.*, 183 F.R.D. 157, 159-160 (D.N.J. 1998). ("[The phrase] 'located within the United States' should be taken to mean ... a citizen, or a domestic corporation or association or governmental unit; if an alien, it should at least mean an alien residing in the United States, <u>or if a foreign nation corporation, one with an office in the United States</u>.") (emphasis added)

Next, Al Jazeera argues that its broadcasts are not prohibited by IEEPA, because IEEPA excludes restrictions on "information or informational materials" which would violate the First Amendment. This argument is of course circular since it assumes that Al Jazeera's provision rocket landing sites is protected by the First Amendment which, as shown above, it is not.

Notably, Al Jazeera's claim that its provision of broadcast services to Hezbollah is not barred under IEEPA or the UNPA is not shared by the United States Attorney. *See* Exhibit A, B.

Al Jazeera also claims that "[t]he types of 'services' addressed by the Executive Orders and implementing regulations are "legal, accounting, financial, brokering, freight forwarding, transportation, public relations, [or] education.' 31 C.F.R. § 594.406(b)." Memo at 18.

This claim is a gross misstatement of § 594.406(b), which explicitly states that the services listed are merely "Example[s]." *Id*.

Thus, the criminality requirement of § 2331(1)(A) is met by these provisions, too.

§ 1025 of Title 13 of the Vermont Statutes

The FAC also alleges that Al Jazeera's actions, if committed in Vermont, would have violated § 1025 of Title 13 of the Vermont Statutes, which criminalizes conduct that places or may place another person in danger of death or serious bodily injury. FAC at ¶ 118.[4]

Apparently unhappy with the fact that Congress permitted an ATA plaintiff to satisfy the "criminality" requirement by reference to the criminal law of <u>any</u> State, Al Jazeera terms plaintiffs' reliance on this Vermont provision "bizarre." Al Jazeera is welcome to convey its sentiments to Congress, but name-calling hardly constitutes a defense in a court of law.

Imprecations aside, Al Jazeera offers only two "defenses" to plaintiffs' allegation that its conduct would have violated this criminal provision, both of which are meritless.

<u>First</u>, Al Jazeera claims that "No Vermont decision has applied § 1025 except to situations where a defendant was alleged to have directly used either a firearm or a motor vehicle to place another at risk of serious bodily harm." This claim is not only irrelevant (did Al Jazeera expect to find a decision involving rocket attacks on Vermont residents?) but untrue. *See State v. Brooks*, 163 Vt. 245, 658 A.2d 22 (1995) (faulty gas heater).

Al Jazeera does not argue, much less show – because it cannot – that its conduct would not have been criminal under the elements of § 1025 if carried out in Vermont.

<u>Second</u>, Al Jazeera claims that it could not be charged under § 1025 because its conduct is protected by the First Amendment. But as shown above, conduct that intentionally threatens the safety and security of the public is not protected by the First Amendment.

Thus, Al Jazeera's conduct satisfies the criminality requirement on this basis as well.

---

[4] This provision, which has analogs in many States, substantively follows the Model Penal Code. *See* Model Penal Code § 211.2 ("Recklessly Endangering Another Person").

***

In sum, the conduct attributed to Al Jazeera in the FAC meets the "criminality" element required by §§ 2331(1)(A) and 2333.

### Acts That Appear to Be Intended to Intimidate or Coerce a Civilian Population or Influence the Policy of a Government

A defendant's actions will constitute "international terrorism" only if they "appear to be intended" to intimidate or coerce a civilian population or influence the policy of a government by intimidation or coercion. § 2331(1)(B). Thus, under the plain language if § 2331(1)(B), actual subjective intent does not need to be shown, and a § 2333 plaintiff need only demonstrate that the defendant's actions <u>appear</u> to be intended to intimidate or coerce.

This conclusion was adopted by the *en banc* decision in *Boim*, 549 F.3d 685. *Boim* held that § 2331(1)(B) does not impose a subjective "state-of-mind requirement" and requires only an objective "<u>external appearance</u> rather than subjective intent." *Id*. at 694 (emphasis added).

Significantly for the instant case, the *Boim* court found that this "external appearance" of intent requirement will be met whenever a § 2333 defendant provides material support to a terrorist organization with knowledge of the consequences of its actions:

> A knowing donor to Hamas – that is, a donor who knew the aims and activities of the organization – would know that Hamas was gunning for Israelis … that Americans are frequent visitors to and sojourners in Israel, that many U.S. citizens live in Israel (American Citizens Abroad, an advocacy group for expatriates, reports on the basis of State Department data that in 1999 there were about 184,000 American citizens living in Israel, accounting for about 3.1 percent of the country's population, www.aca.ch/amabroad.pdf, visited Nov. 16, 2008), and that donations to Hamas, by augmenting Hamas's resources, would enable Hamas to kill or wound, or try to kill, or conspire to kill more people in Israel. <u>And given such foreseeable consequences</u>, such donations would "appear to be intended ... to intimidate or coerce a civilian population" or to "affect the conduct of a government by ... assassination," as required by section 2331(1) in order to distinguish terrorist acts from other violent crimes,

> though it is not a state-of-mind requirement; it is a matter of external appearance rather than subjective intent, which is internal to the intender.

*Id*. at 693-694 (emphasis added). *See also Wultz v. Islamic Republic of Iran*, --- F.Supp.2d ----, 2010 WL 4228350 at *33-34 (D.D.C. 2010) (following *Boim*).

In other words, *Boim* held that where, as here, a defendant knows that it is providing material support to a terrorist group such as Hamas (or Hezbollah), and knows that its provision of such support will "augment[] Hamas's resources" and thereby "enable Hamas to kill or wound, or try to kill, or conspire to kill more people" – yet like Al Jazeera provides that material support nonetheless – the Court can and will conclude, based on the objective appearance of the defendant's conduct, that the defendant shares the terrorist group's goals of intimidating and coercing a government or population within the meaning of § 2331(1)(B).

Plaintiffs respectfully submit that the Seventh Circuit's well-reasoned holding in *Boim* – that the provision of material support to a terrorist organization by a defendant which foresees the consequences of that support creates the "appearance" required by § 2331(1)(B) that the defendant shares the terrorist group's goals of intimidating and coercing a government or a civilian population – should be adopted by this Court (as it was in *Wultz*).

If the Court adopts the *Boim* rule, there is no question that § 2331(1)(B) is satisfied here, because the FAC alleges that Al Jazeera provided assistance to Hezbollah with full knowledge that Hezbollah would use that assistance to attack civilians such as the plaintiffs. This knowing conduct gives rise to the objective "external appearance" required by § 2331(1)(B) that Al Jazeera shared Hezbollah's goals of intimidating and coercing a civilian population and of influencing the policy of a government by intimidation and coercion.

However, even if this Court declines to adopt the holding in *Boim*, the requirement set forth in § 2331(1)(B) is easily met in this case because the FAC alleges in extensive detail that

Al Jazeera acted with the <u>subjective intention</u> of facilitating terrorist attacks in order to intimidate the Israeli government and public.

Thus, in all events, the FAC adequately pleads the "appear to be intended" element required by § 2331(1)(B).

### **Activities Primarily Outside the United States or Transcend National Boundaries**

Section 2331(1)(C) of the ATA requires that the defendant's actions "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." It is clear under the facts of this case meet this element.

Thus, all the elements of a claim under § 2333 are met.

Al Jazeera also argues that plaintiffs have failed to plead causation. Memo at 20-21. This argument is easily disposed of: "Foreign organizations that engage in terrorist activity [such as Hezbollah] are so tainted by their criminal conduct that <u>any contribution to such an organization</u> facilitates that conduct." *Holder*, 130 S.Ct. at 2724 (emphasis in the original). Likewise, "[g]iven the purposes, organizational structure, and clandestine nature of foreign terrorist organizations [such as Hezbollah] it is highly likely that any material support to these organizations will ultimately inure to the benefit of their criminal, terrorist functions." *Id*. at 2727. So too, "providing material support to a designated foreign terrorist organization [such as Hezbollah] – even seemingly benign support – bolsters the terrorist activities of that organization." *Id.* at 2728.

Thus, the FAC's allegations that Al Jazeera's provision of assistance to Hezbollah bolstered its operational abilities is more than adequate.

Finally, Al Jazeera argues that plaintiffs' ATA claims are barred by the "act of war" exception codified at ATA § 2336(a). Memo at 21-22. This argument fails for three reasons:

First, as a matter of law, attacks on civilians are not covered by the § 2336 "act of war" exception as defined in § 2331. *See Klieman v. Palestinian Authority*, 424 F.Supp.2d 153, 162-167 (D.D.C. 2006); *Biton v. Palestinian Interim Self-Government Authority*, 412 F.Supp.2d 1, 6-11 (D.D.C. 2005). Second, attacks by terrorist groups on civilians do not constitute "armed conflict between military forces of any origin" within the meaning of § 2331 since civilians are not part of any military forces. *Sokolow v. PLO*, 583 F.Supp.2d 451, 458-459 (S.D.N.Y. 2008). Third, terrorist groups such as Hezbollah are not "military forces" within the meaning of § 2331. *Morris v. Khadr*, 415 F.Supp.2d 1323, 1333 (D.Utah 2006). Accordingly, Hezbollah's attacks on the plaintiffs are not within the "act of war" exception.

In sum, the FAC more than adequately states a claim against Al Jazeera for "international terrorism" under § 2333(a) of the ATA.

## III.   The FAC States a Valid Claim for Aiding and Abetting a Violation of § 2333

In the Second Claim for Relief the FAC asserts that Al Jazeera is liable for aiding and abetting Hezbollah's acts of "international terrorism" under ATA § 2333. FAC at ¶¶ 126-135.

Al Jazeera does not dispute – and so concedes – that the conduct attributed to Hezbollah in the FAC constitutes acts of "international terrorism' within the meaning of ATA § 2333, and that the conduct attributed to Al Jazeera in the FAC constitutes aiding and abetting Hezbollah's acts of intentional terrorism.

Rather, Al Jazeera argues that ATA § 2333 does not recognize aiding and abetting liability. Memo at 23. This argument should be rejected because (with one possible exception), every federal court to have considered the question – including several courts in this circuit – has

held that that § 2333 recognizes aiding and abetting liability. *See Linde v. Arab Bank, PLC*, 384 F.Supp.2d 571, 583 (E.D.N.Y. 2005) (Holding that aiding and abetting liability and civil conspiracy liability are available under the ATA); *Strauss v. Credit Lyonnais, S.A.*, 2006 WL 2862704 at \*9 (E.D.N.Y. 2006) (Discussing with approval the theory of secondary liability under the ATA but dismissing claim for insufficient allegations of knowledge); *Stutts v. De Dietrich Group*, 2006 WL 1867060 at \*3 (E.D.N.Y. 2006) (Discussing with approval the theory of secondary liability under the ATA but dismissing claim for insufficient allegations of causation); *Wultz*, 2010 WL 4228350 at \*39-41 (Rejecting claim that aiding and abetting liability is unavailable under § 2333 after performing through analysis and surveying the case law); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and Shareholder Derivative Litig.*, 690 F.Supp.2d 1296, 1309-10 (S.D.Fla. 2010) (Holding that plaintiffs had stated claims for aiding and abetting liability and conspiracy liability under the ATA); *Morris v. Khadr*, 415 F.Supp.2d 1323, 1330 (D.Utah 2006) (Holding that civil liability under the ATA extends to aiders and abettors); *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F.Supp.2d 86, 105-107 (D.D.C. 2003) (Allowing an aiding and abetting claim to proceed against alleged financiers of the September 11 attacks.); *Boim v. Quranic Literacy Inst. and Holy Land Foundation*, 291 F.3d 1000 (7th Cir. 2002) (same).

Despite this wall-to-wall case law, Al Jazeera purports to rely on the majority opinion in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008) (*en banc*) which, according to Al Jazeera, held that § 2333 does not permit secondary liability.

But Al Jazeera's reliance is misplaced because, as Judge Wood pointed out in her dissent, the *Boim* majority did <u>not</u> reverse the earlier panel decisions finding aiding and abetting liability under § 2333. *See Boim*, 549 F.3d at 720 ("The *en banc* majority expresses doubts about this holding, although in the end it neither adopts it nor rejects it") (Wood, J.).

Moreover, even if the opinion of the *Boim* majority could be construed, contrary to Judge Wood's view, as actually negating secondary liability under § 2333 (and not merely "express[ing] doubts" in respect thereto), it does so only in passing and without analysis.

Therefore, this Court should follow the unanimous (or virtually unanimous) cases holding that § 2333 allows aiding and abetting liability. In this regard, the plaintiffs respectfully refer the Court to, and request that it adopt, the extremely persuasive reasoning in *Wultz* at *39-41.

Al Jazeera also urges this Court to hold that <u>civil</u> aiding and abetting liability is unavailable under § 2333, because the <u>criminal</u> provision defining "material support and resources" (§ 2339A(b)(1)) does not explicitly mention "news and other general information" and because another <u>criminal</u> provision, § 2339B(i), provides that "Nothing in this section[5] shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." Memo at 23-24.

This argument is baseless. In the first place, the answer to the general question of whether civil aiding and abetting liability exists under § 2333 does not turn on the specifics of this or that particular case. Either such liability exists in general, or it does not. Moreover, Al Jazeera's attempt to subordinate the question of <u>civil</u> aiding and abetting liability to provisions contained in <u>criminal</u> sections of the same chapter of Title 18 is unfounded. The civil cause of action set forth at 18 U.S.C. § 2333 is completely independent from any specific criminal provision. As discussed *supra*, Congress permitted a plaintiff to satisfy the "criminality" requirement of § 2333 (as defined in § 2331) using <u>any</u> federal or state crime. While a plaintiff is <u>permitted</u> to satisfy

---

[5] While this provision expressly applies only to "this section" – i.e. only to § 2339B – Al Jazeera falsely asserts that it applies to the ATA as a whole. *See* Memo at 23-24 ("Congress … specified that <u>nothing in the ATA</u> 'shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States,' 18 U.S.C. § 2339B(i).") (emphasis added).

the criminality requirement by relying on criminal provisions such as § 2339A and § 2339B, she is by no means <u>required</u> to do so. Accordingly, neither § 2339A nor § 2339B nor any other criminal provision can limit the scope of civil aiding and abetting liability under § 2333.

The only possible limit on such liability is the First Amendment itself. However, as shown above, the First Amendment does not shield Al Jazeera from liability.

In sum, Al Jazeera "has only argued that secondary liability simply does not exist under the ATA; it has not alternatively argued that plaintiffs have failed to plead any of the necessary particulars of such a claim." *Wultz* at *42. Since aiding and abetting liability is available under § 2333, Al Jazeera has failed to present any grounds to dismiss plaintiffs' Second Claim for Relief.

## IV.    The ATCA Claims

Al Jazeera moves to dismiss the non-American plaintiffs' ATCA claims (FAC ¶¶ 136-144) on the basis of the majority opinion in *Kiobel v. Royal Dutch Petroleum Co.*, 2010 WL 3611392 (2nd Cir. 2010), which held that corporations cannot be liable for violations of the law of nations. Memo at 24. The plaintiffs respectfully believe that *Kiobel* majority's ruling is erroneous, *inter alia* for the reasons stated in the opinion of Judge Leval. *Kiobel*, 2010 WL 3611392 at *25-61. The majority holding in *Kiobel* is currently the subject of a petition for rehearing *en banc*, and may ultimately be the subject of certiorari review by the Supreme Court, and the FAC asserts ATCA claims on behalf of the non-American plaintiffs in the hope and expectation that the majority holding in *Kiobel* will be reversed by the Second Circuit *en banc* or by the Supreme Court. Plaintiffs recognize, of course, that unless and until that happens, this Court is bound by the majority holding in *Kiobel*.

Al Jazeera also argues that the ATCA claims should be dismissed for failure to state a claim, because plaintiffs purportedly fail to plausibly allege that Al Jazeera purposely aided and abetted Hezbollah. Memo at 25. As discussed *supra*, this argument is utterly baseless.

## V.     The Israeli Law Claims

The FAC also asserts causes of action for Negligence and Vicarious Liability (aiding and abetting) under Israeli law on behalf of all the plaintiffs. *See* FAC at ¶¶ 145-164.

Al Jazeera moves to dismiss the Israeli causes of action as time-barred in respect to the adult plaintiffs. Memo at 33-34. Since Al Jazeera has elected to invoke the affirmative defense of limitations, as is its right, plaintiffs are constrained to agree that the Israeli causes of action asserted by the adult plaintiffs must be dismissed as time-barred.

Therefore, the Israeli law claims can be maintained only by the minor American plaintiffs (M.K.(1), A.L.K., M.K.(2), C.K. E.K, M.A., N.A., A.C.A. and N.Y.A.) and the minor non-American plaintiffs (Y.L., R.G.G., K.S.A., A.S.A, A.N.M., B.Z.M., M.M., C.I.M. and I.Z.G.), and should be dismissed in respect to all other plaintiffs.

Al Jazeera also argues that if the Court finds that it lacks jurisdiction over the plaintiffs' federal claims it should decline to exercise supplemental jurisdiction over the Israeli law claims. Memo at 26-26. Plaintiffs agree that if all their federal claims are dismissed, there would be no grounds to exercise jurisdiction over their non-federal claims, given the early stage of this case.

However, if the Court denies Al Jazeera's motion to dismiss plaintiffs' federal claims, it can and should exercise supplemental jurisdiction over their non-federal claims under 28 U.S.C. § 1367(a), since all the claims "derive from a common nucleus of operative fact" (*Cicio v. Does*, 321 F.3d 83, 97 (2nd Cir. 2003)), namely: Al Jazeera's assistance to Hezbollah.

For its part, Al Jazeera argues that the "Court should dismiss the Israeli claims even if it does not immediately dismiss Plaintiffs' federal claims" on the grounds that the plaintiffs' Israeli law claims purportedly "raise[] a novel or complex issue of State law." Memo at 26.

This argument is baseless. The elements of the Israeli causes of action asserted by the plaintiffs are set forth in clear detail at ¶¶ 145-164 of the FAC. Furthermore, the recent decision in *Wultz* thoroughly analyzed the elements and substance of the same Israeli causes of action asserted by the instant plaintiffs – Negligence and Vicarious Liability. *See Wultz v. Islamic Republic of Iran*, --- F.Supp.2d ----, 2010 WL 4228350 at *42-52, *64-66. (D.D.C. 2010).

Notably, the *Wultz* court rejected the assertion that it would have difficulty determining Israeli law absent depositions of the parties' Israeli law experts since "[m]ost Israeli laws have been published in English-and most of those have been officially published in Laws of the State of Israel and Laws of the State of Israel (New Version)-and there is abundant English-language commentary on Israeli law in books, law reviews, and treatises. *See* Ruth Levush, Israeli Law Guide (Nov. 24, 2007), http://www.llrx.com/features/israel3.htm (identifying English-language sources)." *Wultz v. Islamic Republic of Iran*, 2010 WL 4166773 at *2 (D.D.C. 2010).

Notwithstanding the above, Al Jazeera intentionally attempts to sow confusion where none exists, claiming that in order to hear plaintiffs' Israeli law claims this Court would have to decide whether: (i) "Al Jazeera's broadcasts actually violated Israel's censorship prohibitions in force in 2006"; (ii) "it was certain at the time that the broadcasts would harm public safety" and the censorship prohibitions were therefore properly imposed; (iii) "Israeli law permits the imposition of civil damages for such a violation of military censorship"; (iv) "a news publisher owes a duty to the public not to broadcast news that may conceivably used to commit a crime";

and (v) "civil liability for such broadcasts is compatible with Israeli concepts of freedom of the press." Memo at 26-27.

These claims are either outright false or rank speculation conjured out of thin air by Al Jazeera. For starters, the Israeli torts of Negligence and Vicarious Liability most clearly do <u>not</u> require that the tortfeasor violate any statutory or other prohibitions. *See Wultz*, 2010 WL 4228350 at \*42-52 and \*64-66; FAC ¶¶ 145-164. Accordingly, Al Jazeera's claims that this Court would have to determine whether Al Jazeera violated Israel's censorship prohibitions, whether those prohibitions were justified because "it was certain at the time that the broadcasts would harm public safety" and whether Israeli law permits civil damages for such a violation of military censorship are pure fiction. The question of whether Al Jazeera violated Israeli censorship is totally irrelevant to its tort liability for Negligence and Vicarious Liability.

Likewise, Al Jazeera's assertion that determining whether under Israeli law "a news publisher owes a duty to the public not to broadcast news that may conceivably used to commit a crime" and "civil liability for such broadcasts is compatible with Israeli concepts of freedom of the press" present "novel or complex issue[s]" is baseless.

In the first place, these assertions grossly misstate the FAC: Al Jazeera is not alleged to have "broadcast news that may conceivably used to commit a crime" but to have broadcast information with the specific intent of assisting the crimes of murder and battery.

More importantly, Al Jazeera has failed to cite any Israeli authority whatsoever showing that these purported "questions" are questions at all. A defendant cannot sit in his armchair and dream up putative defenses that have no demonstrable basis in foreign law, and then self-servingly characterize them as "novel or complex" for the purpose of § 1367(c).

On the contrary, where, as here, a party cooks up and tosses out its own speculations as to the substance of foreign law – but fails to present any support therefor – the court should ignore those conjectures and assume that the foreign law is no different than the law of the forum:

> Plaintiff responds that, although an Italian extraordinary administrator is similar to a bankruptcy trustee, his position is not the same. He implies that Italian law perhaps takes a more expansive view of which or whose claims he may assert here. But he does not so demonstrate. His vague allusions to potentially differing law are not entitled to any weight. In the absence of proof to the contrary, foreign law therefore may be presumed to be the same as local law.

*In re Parmalat Securities Litigation*, 377 F.Supp.2d 390, 420-421 (S.D.N.Y. 2005) (footnotes omitted) (emphasis added). *See also e.g. Fairchild Semiconductor v. Third Dimension (3D) Semiconductor, Inc.*, 594 F.Supp.2d 97, 110 (D.Me. 2009) ("[D]espite all [the defendant's] talk about how complex and different Chinese patent law is" it failed to show any difference between Chinese and U.S. patent law, and the court would therefore assume that no difference existed).

The Court should therefore assume that in respect to the putative "issues" which Al Jazeera raises, Israeli law does not differ from U.S. law and so is not "novel or complex."

Accordingly, if Al Jazeera's motion is denied in respect to some or all of the federal claims, the Court should exercise supplemental jurisdiction over the Israeli causes of action.

Al Jazeera also moves to dismiss the Israeli claims on grounds of *forum non conveniens*. Memo at 27-31. This argument, too, is entirely without merit.

First, the Supreme Court has ruled that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (emphasis added). Applying *Gilbert*, the Second Circuit has directed that "a court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" otherwise. *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71 (2nd Cir. 2001) (*en*

*banc*) (emphasis added). *Iragorri* "announced a sliding scale approach where the 'more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.'" *Aracruz Trading v. Japaul Oil*, 2009 WL 667298 at * 3 (S.D.N.Y. 2009).

Here, the plaintiffs assert their non-federal claims alongside federal claims and seek to have all claims arising from the same nucleus of operative fact litigated at once. This is clearly a "reason[] that the law recognizes as valid." *See e.g. Gagliardi v. Universal Outdoor Holdings* 137 F.Supp.2d 374, 380 (S.D.N.Y. 2001) ("[A]ll of the charges involve the same nucleus of operative fact. Trying them together would further the interests of judicial efficiency and economy."). Therefore, plaintiffs' choice of forum for their Israeli claims should stand.[6]

<u>Second</u>, the private and public factors strongly favor litigating plaintiffs' Israeli claims in this Court along with their federal claims. Litigating Al Jazeera's liability under Israeli law will not require any evidence, documents, witnesses or discovery whatsoever that are not required for and that will not be sought by the plaintiffs for their federal causes of action. Thus, litigating the Israeli claims in this Court imposes no additional burden whatsoever. Indeed, Al Jazeera's motion to dismiss for *forum non conveniens* is in effect a proposal that this case be bifurcated, and that plaintiffs' federal claims be heard in this Court and their Israeli claims be heard in Israel. It is difficult to conceive of a more absurd waste of judicial resources.

---

[6] Al Jazeera has not sought to dismiss plaintiffs ATA's claims for *forum non conveniens*, presumably because ATA § 2334(d) effectively negates such a defense. *See Goldberg v. UBS AG*, 660 F.Supp.2d 410, 419-423 (E.D.N.Y. 2009) (Denying motion to dismiss ATA action in favor of Israeli forum, on the ground that Israel failed to satisfy strict requirements of § 2334(d)).

Finally, Al Jazeera argues that the Israeli claims should be dismissed on First Amendment grounds. Memo at 31-32. This argument should be rejected for all the reasons set forth above in respect to plaintiffs' federal claims.

Therefore, Al Jazeera's motion to dismiss the Israeli law claims asserted by the minor plaintiffs (M.K.(1), A.L.K., M.K.(2), C.K. E.K, M.A., N.A., A.C.A., N.Y.A., Y.L., R.G.G., K.S.A., A.S.A, A.N.M., B.Z.M., M.M., C.I.M. and I.Z.G.) should be denied.

**WHEREFORE** the instant motion should be denied in all respects.

Plaintiffs, by their Attorney,

/s/ Robert J. Tolchin
Robert J. Tolchin, Esq.
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
Telephone: (718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com

NITSANA DARSHAN-LEITNER & CO.
Nitsana Darshan-Leitner, Adv.
(Israeli co-counsel)
10 Hata'as Street
Ramat Gan, 52512 Israel

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman, Esq.
Noel J. Nudelman, Esq.
Tracy Reichman Kalik, Esq.
1146 19th Street, N.W., Fifth Floor
Washington, DC 20036 (202) 463-1818
Telephone: (202) 463-1818
Fax: (202) 463-2999
*Co-counsel for Plaintiffs Ester Lelchook, Michal
Lelchook, Yael Lelchook, Alexander Lelchook and
Doris Lelchook*