UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                :
CHAIM KAPLAN, et al.,                           :
                                                :
                    Plaintiff,                  :        10 Civ. 5298
                                                :        Opinion & Order
            -against-                           :
                                                :
AL JAZEERA,                                     :
                                                :
                    Defendant.                  :
------------------------------------------------------X

WOOD, U.S.D.J.:

**I.    Overview**

A group of American, Israeli, and Canadian civilians ("Plaintiffs") bring this action against Al Jazeera ("Defendant"), alleging claims under the Antiterrorism Act, 18 U.S.C. § 2333, under the Alien Tort Statute, 28 U.S.C. § 1350, and under Israeli law for negligence and vicarious liability.

Defendant moves to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). For the reasons that follow, the Court GRANTS Defendant's motion in part, and declines to exercise supplemental jurisdiction over Plaintiffs' remaining Israeli law claims.

**II.   Background**

The following facts are drawn from Plaintiffs' Complaint, and are taken as true for the purposes of Defendant's Rule 12(b)(6) motion. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

   A.    The Parties

1

Plaintiffs are a group of United States, Canadian, and Israeli citizens who were injured in a series of rocket and missile attacks carried out in Israel by the Hezbollah organization ("Hezbollah")[1] between July 12, 2006 and August 14, 2006; Plaintiffs also include the family members and personal representatives of the estates of one American citizen and four Israeli citizens who were killed in those attacks. (FAC ¶¶ 1-12.)

Defendant is a television network incorporated in Qatar, which conducts business in the United States. (FAC ¶ 13.)

B.  Facts

Between July 12, 2006 and August 14, 2006, Hezbollah fired thousands of rockets and missiles at civilians in northern Israel (referred to by Plaintiffs as the "Hezbollah Rocket Barrage"). (FAC ¶ 34.) The Hezbollah Rocket Barrage resulted in the deaths of at least forty-three civilians and injured hundreds of others. (FAC ¶ 35.)

Plaintiffs state that it was "extremely difficult" for Hezbollah to aim its rockets during the Hezbollah Rocket Barrage, because Hezbollah's rockets had no internal guidance system. (FAC ¶ 36.) Plaintiffs state that the only way for Hezbollah to aim its rockets accurately was for it to obtain information regarding the precise locations where other rockets had already landed, and to then adjust the trajectory of subsequently fired rockets accordingly. (FAC ¶ 37.) Plaintiffs allege that such information (i.e. where Hezbollah's rockets had landed) was broadcast by Defendant. (FAC ¶¶ 39-41.)

---

[1] Plaintiffs describe Hezbollah as a "radical Islamic terrorist organization" that seeks to "destroy[] the State of Israel by carrying out terrorist attacks against Israel and Israeli targets, including Israeli civilians." (FAC ¶¶ 17, 19.)
    The United States has designated Hezbollah a "Specially Designated Terrorist," a "Foreign Terrorist Organization," and a "Specially Designated Global Terrorist." (FAC ¶ 28.)

Specifically, Plaintiffs state that, during the course of the Hezbollah Rocket Barrage, Defendant's employees, while located in Israel, "repeatedly and intentionally recorded and transmitted to Al Jazeera's broadcast facilities real-time audiovisual footage . . . describing and depicting the precise impact locations in Israel of rockets fired by Hezbollah, and [that] those transmissions were broadcast in real-time to the public by Al-Jazeera." (FAC ¶ 39.) Plaintiffs state that Defendant's recording, transmission, and broadcast of the impact locations of Hezbollah's rockets was done pursuant to "the official organizational policies" of Defendant.[2] (FAC ¶ 40.)

Plaintiffs state that Defendant broadcast the impact locations of Hezbollah's rockets "for the specific purpose and with the specific intention of assisting Hezbollah to more accurately aim its rockets, and thereby inflict more and greater harm" on Israel and the United States. (FAC ¶ 42.)

In this action, Plaintiffs assert five claims against Defendant. First, those Plaintiffs with United States citizenship claim that Defendant's news broadcasts of the Hezbollah Rocket Barrage constitute "acts of international terrorism" under the Antiterrorism Act, 18 U.S.C. § 2333(a). (See FAC ¶¶ 113-25.) Second, those same Plaintiffs claim that Defendant aided and abetted Hezbollah's "international acts of terrorism" under the Antiterrorism Act. (See FAC ¶¶

---

[2] In 2003, the Israeli military issued standing orders to news organizations forbidding them from reporting real-time information regarding the impact locations of Hezbollah's rockets. Those standing orders were distributed to all news organizations with representatives in Israel, including Defendant. (FAC ¶ 38.) The standing orders were reissued when the Hezbollah Rocket Barrage began in 2006. Defendant received the standing orders at that time. (FAC ¶ 38.)

Defendant's employees were arrested on several occasions by Israeli authorities for violating the standing orders, by broadcasting footage depicting the impact locations of rockets fired by Hezbollah. (FAC ¶ 39.) Plaintiffs do not allege that Defendant or Defendant's employees were ever convicted of any violation of these standing orders or any other censorship law.

3

126-35.)  Third, those Plaintiffs who do not have United States citizenship[3] claim that Defendant aided and abetted Hezbollah's war crimes and violations of the law of nations within the meaning of the Alien Tort Statute, 28 U.S.C. § 1350.  (See FAC ¶¶ 136-44.)  Finally, all Plaintiffs bring claims under Israel's Civil Wrongs Ordinance for negligence and vicarious liability.  (See FAC ¶¶ 145-64.)

Defendant moves to dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6).  (See Dkt. Entry No. 22.)

### III. Legal Standard

In order to survive a Rule 12(b)(6) motion, a plaintiff must have pleaded sufficient factual allegations "to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009).  Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Twombly, 550 U.S. at 570; see also Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) ("'[W]here the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct,' however, dismissal is appropriate.") (quoting Iqbal, 129 S. Ct. at 1950).

The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor."  Allaire Corp. v. Okumus, 433 F.3d 248, 249-50

---

[3] One of these plaintiffs, Ester Lelchook, is an Israeli citizen, not a United States citizen. However, she is the widow of David Marti Lelchook, a United States citizen, and the complaint refers to her at times as an "American plaintiff."  (See FAC at 5 n1.)

4

(2d Cir. 2006) (internal quotations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id; see also Twombly, 550 U.S. at 555 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986))).

Finally, the requirement to plead facts rather than legal conclusions applies to allegations of a defendant's intent as well as allegations about a defendant's conduct.  See Iqbal, 129 S. Ct. at 1954 ("Respondent finally maintains that the Federal Rules expressly allow him to allege petitioners' discriminatory intent 'generally,' which he equates with a conclusory allegation. . . . But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

**IV.   Analysis**

    A.   Plaintiffs' Antiterrorism Act Claim

Those Plaintiffs with United States citizenship claim that Defendant's news broadcasts of the Hazbollah Rocket Barrage constitute "acts of international terrorism," under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a).  (See FAC ¶¶ 113-25.)  Defendant has moved to dismiss Plaintiff's Section 2333(a) claim, arguing that the complaint fails to plead a plausible claim under the under Rule 12(b)(6).  For the reasons that follow, the Court finds that Plaintiffs have failed to sufficiently plead a violation of Section 2333(a).

    1.   Applicable Law

The ATA creates a private right of action for any national of the United States who is "injured in his or her person, property, or business by reason of an act of international terrorism."

18 U.S.C. § 2333(a) (emphasis added).  Acts of international terrorism are defined as "activities" that:

> (A) involve violent acts or acts dangerous to human life that are <u>a violation of the criminal laws</u> of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended--
>     (i) to intimidate or coerce a civilian population;
>     (ii) to influence the policy of a government by intimidation or coercion; or
>     (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum;

18 U.S.C. § 2331(1)(A)-(C) (emphasis added).

The parties devote much of their papers to discussing whether Plaintiffs have plausibly pled a predicate violation of a criminal law pursuant to 18 U.S.C. § 2331(1)(A).  More important, however, is the fact that, "irrespective of which statute . . . provides the basis for a finding that defendant engaged in international terrorism, plaintiffs must still meet the scienter requirements of § 2333(a) itself in order to hold defendant liable under that statute."  <u>Goldberg v. UBS AG</u>, 660 F. Supp. 2d 410, 427-28 (E.D.N.Y. 2009) (citing <u>Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.</u>, 291 F.3d 1000, 1016 (7th Cir. 2002) [hereinafter "<u>Boim I</u>"].

Although Section 2333(a) does not explicitly contain a state of mind requirement, courts have interpreted the statute "to include a requirement that there be some deliberate wrongdoing by the defendant, in light of the fact that the statute contains a punitive element (<u>i.e.</u> treble damages)."  <u>Goldberg</u>, 660 F. Supp. 2d at 428; see also <u>Rothstein v. UBS AG</u>, 08 Civ. 4414, 2011 WL 70354, at *5 (S.D.N.Y. Jan. 3, 2011) [hereinafter "<u>Rothstein II</u>"] (stating that Section

2333(a) "expressly require[s] intent"). Indeed, in perhaps the most comprehensive decision to date addressing Section 2333(a), the Seventh Circuit, sitting *en banc*, held that, "since section 2333 provides for an automatic trebling of damages[,] it . . . require[s] proof of intentional misconduct." Boim v. Holy Land Found. for Relief and Dev., 549 F.3d 685, 692 (7th Cir. 2008) [hereinafter "Boim II"]. The Seventh Circuit reasoned that:

> Punitive damages are rarely if ever imposed unless the defendant is found to have engaged in deliberate wrongdoing. Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or "malice," <u>or a fraudulent or evil motive on the part of the defendant,</u> or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful [sic] or wanton.

Id. (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 2, pp. 9-10 (5th ed.1984)) (emphasis added).

### 2. Application of Law to Facts

Plaintiffs <u>have</u> alleged (1) that, because Hezbollah's rockets had no internal guidance system, Hezbollah needed to see where its rockets had already landed in order to aim its subsequent rockets more accurately; (2) that Defendant broadcast news of the Hezbollah Rocket Barrage; and (3) that Defendant was known by others to have an anti-American and anti-Israeli bias. Plaintiffs have <u>not</u> alleged any facts suggesting (1) that Defendant intended for Hezbollah to view its broadcasts; (2) that Hezbollah actually viewed Defendant's broadcasts; and (3) that Defendant knew that Hezbollah was viewing its broadcasts. Accordingly, Plaintiffs' claim is simply that Defendant broadcast information that may have been helpful to Hezbollah in achieving its organizational goals. This claim lacks the elements of both intent and proximate cause that are necessary for Plaintiffs' Section 2333(a) claim.

### a. Intent

7

The gravamen of Plaintiffs' complaint is that Defendant broadcast the Hezbollah rocket attacks "with the <u>intention</u> of assisting Hezbollah to improve its aiming ability."  (<u>See</u> Pl. Opp. at 8 (original emphasis)); <u>see also</u> FAC ¶ 41 ("Al Jazeera repeatedly recorded, transmitted, and broadcasted the impact locations of Hezbollah rockets . . . with the specific intention of assisting Hezbollah to harm Israel and the United States, consistent with and pursuant to Al Jazeera's support for Hezbollah and its goals.").

Plaintiffs' allegation of Defendant's wrongful intent must be supported by "sufficient factual matter" in order for Plaintiff to survive Defendant's motion to dismiss.  <u>Iqbal</u>, 129 S. Ct. at 1949.  Plaintiffs' complaint must "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."  <u>Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 557).

The Court finds that Plaintiffs have failed to meet this burden.  To support their claim of wrongful intent, Plaintiffs assert that Defendant has an official "anti-American and anti-Israel organizational policy."  (FAC ¶ 33.)  In support of this assertion, Plaintiffs cite to eight statements and three actions made or taken by third parties.  (<u>See</u> FAC ¶ 33.)  Plaintiffs contend that these statements and actions show that <u>others</u> found Defendant's news coverage to favor Hezbollah, and to be biased against Israel and/or the United States.  (<u>Id.</u>)  For example, Plaintiffs state that United States officials filed a diplomatic complaint against Defendant, accusing Defendant of having an anti-American slant, and objecting to Defendant describing Palestinian suicide bombers as "martyrs."  (FAC ¶ 33(a).)  Plaintiffs also cite an opinion piece in the *New York Times* that stated that Defendant's coverage of the September 11, 2001 attacks, and the

8

United States' war against terrorism more generally, has been "entirely from the Taliban point of view." (FAC ¶ 33(b).)

Assuming that all of those statements were made, and that those actions were taken—and that others found Defendant's news reports to be biased—Plaintiffs have still failed to allege any facts suggesting that Defendant broadcast news of the Hezbollah Rocket Barrage with the intention of assisting Hezbollah. Only three of Plaintiffs' eleven citations even refer to Hezbollah. (See FAC ¶ 33(i)-(k).) Only one of those three citations asserts that Defendant has any bias in favor of Hezbollah specifically—and even that says nothing about any "official organization policy" that Defendant may have had, let alone any intention Defendant may have had to aid Hezbollah. (See FAC ¶ 33(k) ("Al-Jazeera has a bias towards . . . Hizballah.").) Finally, only one of the statements cited by Plaintiffs is made on Defendant's behalf; it consists of Al Jazeera's spokesman's statement that: "[m]oney is not of paramount importance. We believe we have a mission." (FAC ¶ 33(d).) That statement—"[w]e believe we have a mission"—suggests nothing about what Defendant's mission actually is, and Plaintiffs offer no facts to elucidate that statement. (See FAC ¶ 33(d).) As Defendant notes, this spokesman could be referring to any number of missions, including simply a news organization's "mission" to accurately report the news. (Def. Mem. at 11-12 n.6.)

Plaintiffs assert that they have met their burden of pleading intent, because Section 2331(1)(B) requires only the appearance of intent, which is "a matter of external appearance rather than subjective intent." See Pl. Opp. at 22-23 (citing Boim II, 549 F.3d at 694); see also 18 U.S.C. § 2331(1)(B)). Plaintiffs cite the Seventh Circuit's en banc decision in Boim II to support their argument. Id. In Boim II, parents of a United States citizen who was fatally shot in Israel by gunmen allegedly working for the Hamas terrorist organization brought a Section

9

2333(a) claim against three organizations, claiming that those organizations provided financial support to Hamas before their son's death. 549 F.3d at 687-88. After finding that Section 2333(a) requires "proof of intentional misconduct," the Seventh Circuit held that, a "knowing donor to Hamas—that is, a donor who knew the aims and activities of the organization" would know that "by augmenting Hamas's resources, [they] would enable Hamas to kill or wound . . . people in Israel." Id. at 693-94. The Court concluded that, "<u>given such foreseeable consequences</u>, such donations would 'appear to be intended ... to intimidate or coerce a civilian population' . . . as required by section 2331(1)." Id. at 694 (emphasis added); see also Goldberg, 660 F. Supp. 2d at 428 ("[I]t is sufficient to show that [the defendant] knew the entity had been designated as a terrorist organization, and deliberately disregarded that fact while continuing to provide <u>financial services</u> to the organization <u>with knowledge that the services would in all likelihood assist the organization in accomplishing its violent goals</u>.") (emphasis added).

By making this comparison to Boim II, Plaintiffs seem to be suggesting that Defendant's broadcast of the Hezbollah Rocket Barrage constitutes a provision of material support to Hezbollah—akin to the money given to Hamas in Boim II—and that the foreseeable consequence of that broadcast was to enable Hezbollah to aim its rockets more accurately at targets.

This suggestion strains credulity. When a person donates money to an organization, like in Boim II, the "foreseeable consequence" of that action is that that money will be used to further the goals of the organization, or to "augment" the organization's resources. Boim II, 549 F.3d at 693-94. Here, Plaintiffs have offered no facts suggesting that Defendant broadcast news of the rocket attacks "with knowledge that the services [i.e. its broadcast] would in all likelihood assist the organization in accomplishing its violent goals." Goldberg, 660 F. Supp.2d at 428. In fact,

10

Plaintiffs have offered no facts suggesting that Defendant even <u>knew</u> that it was providing <u>anything</u> to Hezbollah. This is a far cry from donating money to a terrorist organization.

Unlike a financial donation to a terrorist organization, news coverage of the activities of a terrorist organization can serve an entirely different and acceptable purpose, namely, delivering important information to the public.[4] See Twombly, 550 U.S. at 567 (discussing an "obvious alternative explanation" to the claim being advanced). For all of these reasons, Plaintiffs have failed to plausibly plead the element of intent that is necessary for their Section 2333(a) claim.

### b. Proximate Cause

Plaintiffs have also failed to plead the element of proximate cause necessary for a Section 2333(a) claim. Section 2333 provides redress to victims who demonstrate that they were injured "<u>by reason of</u> an act of international terrorism." 18 U.S.C. § 2333(a) (emphasis added). "The 'by reason of' language, ultimately derived from the Clayton Antitrust Act of 1914[,] . . . has typically been construed as synonymous with 'proximate cause.'" Rothstein v. UBS AG, 647 F. Supp. 2d 292, 295 (S.D.N.Y. 2009) [hereinafter "Rothstein I"]; see also Goldberg, 660 F. Supp. 2d at 429 ("The words 'by reason of' have been interpreted to express Congress's intent to require a showing of proximate causation."). "Establishing a proximate causal relationship <u>between the defendant's conduct and the plaintiff's injuries</u> is an indispensable element of a Section 2333(a) civil damages claim." Rothstein II, 2011 WL 70354, at *4 (emphasis added); see also Stutts v. De Dietrich Group, No. 03-CV-4058, 2006 WL 1867060, at *3 (E.D.N.Y. Jun. 30, 2006) (finding that the "by reason of international terrorism" language "implies a proximate

---

[4] Plaintiffs do not appear to dispute the fact that the Hezbollah rocket attacks were covered by all three of the major United States news networks, as well as CNN, Fox News, and multiple international news organizations. (See Def. Reply Mem. at 10.)

cause requirement such that it must be reasonably foreseeable that a defendant's conduct is likely to result in violent criminal acts") (citations omitted).

Plaintiffs have not alleged any facts suggesting that Defendant's broadcasts were used by Hezbollah to better target their rockets. Plaintiffs have offered no facts suggesting that Hezbollah viewed Defendant's broadcasts (rather than another network's broadcasts or no broadcasts at all).[5]

    c.    Conclusion

In sum, the Twombly/Iqbal plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949. For these reasons stated above, Plaintiffs' first claim under the ATA must be dismissed.[6]

---

[5] Plaintiffs cite the Supreme Court's decision in Holder v. Humanitarian Law Project, 130 S. Ct. 2705 (2010), in arguing that Defendant's conduct proximately caused Plaintiffs' injuries. (See FAC at ¶¶ 102-12.) Citing to an Executive Branch finding, the Supreme Court in Holder noted that, "[g]iven the purposes, organizational structure, and clandestine nature of foreign terrorist organizations, it is highly likely that any material support to these organizations will ultimately inure to the benefit of their criminal, terrorist functions-regardless of whether such support was ostensibly intended to support non-violent, non-terrorist activities." Id. at 2727.

    Holder is inapposite. First and most significantly, Holder dealt with 18 U.S.C. § 2339B, which makes it a federal crime to "knowingly provide material support or sources to a foreign terrorist organization." The instant proximate cause analysis involves 18 U.S.C. § 2333(a), not 18 U.S.C. § 2339B. Second, Holder involved organizations and individuals that were seeking to "provide support for" the Partiya Karkeran Kurdistan and the Liberation Tigers of Tamil Ealam, but claimed that they "could not do so for fear of prosecution under § 2339B." Id. at 2714. Thus, those organizations and individuals were admittedly intending to give support to particular organization, whereas here, there are no facts suggesting that Defendant intended to aid Hezbollah.

[6] Because the Court finds that Plaintiffs have failed to plausibly plead intent and proximate causation, the Court need not address whether Plaintiffs have adequately pled a predicate criminal violation pursuant to 18 U.S.C. § 2331(1)(A).

B.    Plaintiffs' Aiding and Abetting Terrorism Claim

Those Plaintiffs with United States citizenship also claim that Defendant aided and abetted Hezbollah's "international acts of terrorism" under the ATA.  (See FAC ¶¶ 126-35.)  For the reasons that follow, the Court finds that Plaintiffs have failed to state a claim for aiding and abetting terrorism.

In Boim II, the Seventh Circuit held that a defendant in an ATA action cannot be held liable on an aiding and abetting theory.  See 549 F.3d at 689 (finding that Congress's "statutory silence on the subject of secondary liability [in the ATA] means there is none").  The Court explicitly relied on the fact that "section 2333(a) authorizes awards of damages to private parties but does not mention aiders and abettors or other secondary actors."  Id.

The Second Circuit does not appear to have addressed this precise issue of whether a defendant in an ATA action can be held liable on an aiding and abetting theory.  However, even assuming *arguendo* that a defendant in an ATA action can be held liable for aiding and abetting, Plaintiffs would be required to make "adequate allegations that the defendant not only knew that its funds would be used to sponsor terrorist acts by [the terrorist organization] . . . but also [that it] intended to do so."  Rothstein II, 2011 WL 70354, at *2 (citations omitted).  Indeed, the Court in Boim II noted that "the aiding and abetting standard . . . conditions liability on proof that a defendant knew of the organization's illegal purposes and had the intent to further those purposes when that defendant joined and/or aided the organization."  Boim II, 549 F.3d at 685 (citations omitted).

---

The Court therefore need not also address a recent dispute that has arisen with respect to whether Plaintiffs can properly submit post-complaint briefing on the applicability of various state criminal laws without first amending their complaint.

The Court therefore need not resolve whether aiding and abetting liability exists for violations of Section 2333(a). For the reasons stated above,[7] the Court finds that Plaintiffs have asserted no facts that plausibly suggest that Defendant knew its broadcasts "would be used to sponsor terrorist acts." See Rothstein II, 2011 WL 70354, at *2. Nor have Plaintiffs asserted facts that suggest that Defendant "intended" for its broadcast to be used to support terrorist acts. See id. For these reasons, the Court finds that Plaintiffs have failed to state a claim for aiding and abetting terrorism under the ATA.

      C.      Plaintiffs' Alien Tort Statute Claim

Those Plaintiffs who do not have United States citizenship claim that Defendant aided and abetted Hezbollah's war crimes and violations of the law of nations within the meaning of the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. (See FAC ¶¶ 136-44.)

Plaintiffs' claim fails as a matter of law and must be dismissed. The Second Circuit has held that corporations cannot be held liable for violations of customary international law. See Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 145 (2d Cir. 2010). In Kiobel, the Second Circuit concluded that:

> Because corporate liability is not recognized as a "specific, universal, and obligatory" norm . . . it is not a rule of customary international law that we may apply under the ATS. Accordingly, insofar as plaintiffs in this action seek to hold only corporations liable for their conduct in Nigeria (as opposed to individuals within those corporations), and only under the ATS, their claims must be dismissed for lack of subject matter jurisdiction.

---

[7] See supra Section IV.A.2.a.

Id. (citation omitted). Here, Plaintiffs are seeking to hold Defendant, a corporation, liable for war crimes and violations of the law of nations under the ATS. Accordingly, this Court does not have subject matter jurisdiction over Plaintiffs' ATS claim.[8]

### D. Plaintiffs' Israeli Law Claims for Negligence and Vicarious Liability

Finally, all Plaintiffs assert claims for negligence and vicarious liability under Israel's Civil Wrongs Ordinance (the "CWO"). (See FAC ¶¶ 145-64.)

In their opposition to Defendant's motion to dismiss, Plaintiffs now acknowledge that the statute of limitations has run on the negligence and vicarious liability claims of all adult Plaintiffs. (See Pl. Op. at 29 ("[P]laintiffs are constrained to agree that the Israeli causes of action asserted by the adult plaintiffs must be dismissed as time-barred.").) Therefore, Plaintiffs maintain their negligence and vicarious liability claims only with respect to those Plaintiffs who are minors. (Id.)

Both Defendant and Plaintiffs have stated in their submissions that they prefer that, in the event that all of Plaintiffs' federal claims are dismissed, the Court not exercise supplemental jurisdiction over Plaintiffs' Israeli law claims. (See Pl. Op. at 30; Def. Mem. at 25.) Accordingly, because the Court had dismissed all of Plaintiffs' federal claims, the Court will not exercise jurisdiction over Plaintiffs' non-federal, Israeli law claims.

## V. Conclusion

For the foregoing reasons, Plaintiffs' federal law claims are dismissed pursuant to Rule 12(b)(6), and the Court will not exercise jurisdiction over Plaintiffs' Israeli law claims.

---

[8] Plaintiffs recognize that they are bound by the Kiobel decision. (Pl. Opp. at 29.) They state that they continue to assert their ATS claim only "in the hope and expectation that the majority holding in Kiobel will be reversed." (Id.)

Plaintiffs' claims are dismissed without prejudice and with leave to amend the complaint. By Friday June 17, 2011, at 12:00 p.m., Plaintiffs shall submit to the Court a letter stating whether they intend to file a second amended complaint.

SO ORDERED.

Dated: New York, New York
       June 7, 2011

_____
Kimba M. Wood
United States District Judge